Samuel F. Patterson v. Commissioner.
Patterson v. Commissioner
Docket No. 3886-68.
United States Tax Court
T.C. Memo 1972-82; 1972 Tax Ct. Memo LEXIS 175; 31 T.C.M. (CCH) 324; T.C.M. (RIA) 72082; April 5, 1972, Filed. Samuel *176 F. Patterson, pro se, General Delivery, San Francisco, Calif.Joel A. Sharon, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1964, 1965, and 1966 in the amounts of $886.15, $1,271.81, and $479, respectively. On October 8, 1971, the Court entered an order dismissing for lack of jurisdiction the petition as it related to 1964 because it was not filed within the time prescribed by section 6213(a) [1] The only issue for decision for 1965 and 1966 is whether petitioner is entitled to deduct numerous items claimed in his income tax returns for those years. Findings of Fact Samuel F. Patterson (hereinafter referred to as petitioner) was a legal resident of San Francisco, California, at the time he filed his petition. He filed his Federal income tax returns for 1965 and 1966 with the district director of internal revenue at Los Angeles, California, or San Francisco, California. Between January and June 1965, and September 1965 and February *177 1966, petitioner was employed as a teacher in the Seventy-Ninty Street School, located in the "Watts" area of Los Angeles, California. While so employed, he was assigned to regular teaching duties at the third and fourth grade levels. Classroom teachers in petitioner's school were given additional assignments, such as yard duty and caring for supplies, to be performed each day before or after the regular school hours. Petitioner discharged his extra-duty requirement by keeping his classroom open daily between 8 and 9 a.m. and 3 and 3:30 p.m. During these periods, children who preferred to do so could stay in his room as an alternative to playing on the school grounds. He referred to his classroom as "A. Learning Laboratory." On September 20, 1965, petitioner purchased an IBM Selectric Typewriter at a cost of $499.20 for use in his schoolwork. This typewriter had a useful life of 5 years. During the portion of the year the typewriter was in use, the depreciation on it amounted to $33.28. On February 25, 1966, petitioner's relationship with the Seventy-Ninth Street School was terminated. Thereafter, on March 5, he went to New York City. While in New York, petitioner applied at one *178 or more teacher placement offices for positions overseas, but was not successful in his applications. In April, he returned to San Francisco, California, where he sought employment as a teacher. During the remainder of 1966, he served as a substitute teacher for 5 days. The rest of the time he was unemployed, or he 325 worked as a salesclerk at Macy's California Department Store. In 1966, petitioner expended the following sums on his trip to New York and deducted them in his income tax return for that year: Item
Amount
Travel
$182.10
Lodging
91.35
On May 24, 1966, petitioner deposited to his account with the Credit Union of the California Teachers Association the sum of $4,203.92 received as a refund of his accumulated contributions to the Retirement Systems of the Los Angeles City School District. The Credit Union disbursed $2,850.20 from this account to pay petitioner's bills. In his 1965 income tax return, petitioner reported salary income of $9,254.05 and claimed deductions totaling $6,769.61. There were attached to his return monthly schedules listing numerous "Itemized Deductions" for expenditures to various stores, such as White Front, J. J. *179 Newberry, Lowders, and Sears, Roebuck. The names of these and other stores were followed by the words "(School Supplies)," "(Piano)," "(Game)," "(Electronic equipment)," or the like. No explanation was given of the purposes for which the expenditures were made. In his 1966 income tax return, petitioner reported adjusted gross income of $3,857.54 and deducted itemized expenses totaling $5,225.78. Again, he attached to his return a schedule for each month, listing various amounts of expenditures. In addition to amounts claimed as deductions for the cost of travel and lodging in connection with the trip to New York, he deducted amounts designated as "School Supplies," the cost of his room at the Y.M.C.A. Hotel, "Loan Repayments (Booth-Johnson)," and other items, including a number denoted "American Opinion Library Loan Equip." In addition, he claimed "Medicine/Drugs" expenses in the amount of $110.38; interest paid to two different credit unions in the amount of $41.38; expenses to maintain his teaching credentials in the amount of $30; and dues to the "Dept. Store Employees Union" in the amount of $18.50. Petitioner also claimed a deduction entitled "Losses of share transactions" in *180 the amount of $2,853.54 (representing the $2,850.20 disbursed by the California Teachers Association Credit Union in payment of his outstanding bills). In his notice of deficiency, respondent disallowed petitioner's itemized deductions for 1965 and 1966 on the grounds that they were not substantiated or that it was not shown that such items were properly deductible. Respondent recomputed petitioner's tax for 1965 on the basis of a standard deduction in the amount of $925.41 and for 1966 on the basis of the tax table prescribed by section 3. Opinion The only issue for decision is whether petitioner is entitled to deduct a wide variety of items claimed in his income tax returns as deductions for 1965 and 1966. [2] Respondent does not challenge petitioner's right as a matter of law to deduct any amounts actually spent for items which were proximately related to his "business" of teaching, i. e., items used in the classroom to supplement the materials, supplies, and other teaching tools furnished by the school system where he was employed. See sec. 162(a); (C.A. 9, 1971), remanding on other grounds a Memorandum Opinion of this *181 Court. Rather, respondent maintains that petitioner is not entitled to his claimed deductions because he has not shown that he actually expended the amounts deducted, or he has not shown the connection between the items purchased and his teaching profession. On consideration of all the evidence, we must conclude that petitioner has not shown that he actually incurred expenditures for the items deducted in either his 1965 or his 1966 returns or that the items for which he actually incurred expenses, with a few exceptions such as a typewriter and his dues and fees for his teaching credentials, had any connection with his "business. *182 " Therefore, he does not qualify for the claimed deductions. Sec. 162(a). 326 In his 1965 return, petitioner deducted no less than 103 items, totaling $659.18, which were described on the schedules attached thereto as "School Supplies." He also deducted amounts totaling $1,209.96, described by the notation "C. E. Penny Co. (Piano)"; he testified that he kept the piano in the apartment of another teacher and left it with her when he departed from Los Angeles. In addition, he deducted at least 5 items, totaling $293.41, designated only as "Sears, Roebuck & Co." The list of deductions also includes large sums referred to as payments to the "Credit Union, California Teachers Association," and purported expenditures for radios, photocopiers, electronic equipment and supplies, a vacuum cleaner, and a host of other items. Despite numerous suggestions by the Court that he must present evidence that he actually paid the deducted expenses and that they were made for business purposes, petitioner's evidence with regard to 1965 consisted only of his own broad generalizations. He did not offer any documentary evidence showing that he actually made the expenditures for most of the items *183 claimed in that year. Nor did he offer any credible evidence to demonstrate how the expenditures served in his teaching. Petitioner sought to explain his lack of records to substantiate his claimed expenditures for 1965 on the ground that agents of the Internal Revenue Service broke into his hotel room and stole his papers. While an employee of the hotel corroborated petitioner's testimony that his room was entered by some unknown person on one occasion, there is no credible testimony to show that this was done by revenue agents or that any papers pertinent to this case were taken. Petitioner was able to substantiate the claimed expenditure for an IBM Selectric Typewriter in 1965. We think there is sufficient showing that the typewriter was used in his schoolwork to permit our Finding that it was bought for a business use. Even so, however, it was a capital item, properly subject to an allowance for depreciation and not fully deductible in the year purchased. Our Findings so reflect. Since the amount of depreciation allowed for 1965 does not approach the standard deduction of $925.41 allowed by respondent, no adjustment to his determination is necessary. With respect to petitioner's *184 expenditures for 1966, receipts were presented for some of the items claimed as deductions. However, there was little or no evidence introduced to show the nature of many of these items. A large number were identified only by a general statement that they were "School Supplies," and there was no evidence to show the connection between those items and petitioner's teaching activities or any other business activities in which he was engaged. Since petitioner resigned his teaching position in February 1966 and thereafter taught as a substitute teacher for only 5 days during the remainder of that year, and since most of his receipts are for the period after he resigned, this Court is hard-pressed to find any rational connection between the purchase of the "School Supplies" and petitioner's teaching during 1966. When confronted with his deductions for "School Supplies" for the period after he had ceased teaching, petitioner replied that "a credentialed teacher within the State of California may teach within the public school system, may teach within the private school system, or may do any form of teaching beyond the hours of nine and three, on an individual or on a group basis, not connected *185 with the school districts." Yet, as noted above, he taught as a substitute teacher for only 5 days in 1966, and he reported no income from any other teaching endeavors. Numerous other large expenditures are also listed on the monthly deduction schedules attached to the 1966 return, labeled "Sears, Roebuck Co.," "Loan Repayments (Booth-Johnson)," etc. The schedules also show monthly payments for room rent to his Y.M.C.A. Hotel, for "School Portable Equipment" ($144.70), and "American Opinion Library Loan Equip." ($170.21). There is no showing that the payments of these items were actually made or that, if made, they covered deductible expenses. Under no theory suggested by petitioner is the $2,850.20 disbursed by the California Teachers Association Credit Union a deductible item. A new type of deduction, not taken on the 1965 return - "Medicine/Drugs" - appeared in the 1966 schedules. The numerous deductions in this category, however, were computed without regard to either the 1 percent of adjusted gross income limitation on medicines or the 3 percent of adjusted gross income overall limitation prescribed by section 213. When the 327 Medicine/Drugs amounts totaling $110.38 are *186 subjected to these limitations there results no allowable deduction. Petitioner claimed deductions for 1966 for interest paid, dues, and expenses to maintain his teaching credentials; however, the total of these items ($89.88) does not approach the standard deduction reflected in the tax table set forth in section 3, and thus no adjustment in respondent's determination is necessary. Petitioner claimed deductions for travel and lodging expenses incurred in 1966 in seeking new employment in New York City. We need not decide whether, even if petitioner actually traveled to New York primarily to obtain a new job, his expenses are deductible. Cf. (C.A. 9, 1970), affirming a Memorandum Opinion of this Court; ; . The total expenses for the travel and lodging ($273.45) when added to the other items noted above ($89.88) still do not amount to as much as the standard deduction in effect allowed by respondent through the use of the section 3 tax table for the computation of petitioner's tax. [3]
*187 The foregoing conclusions are not intended to imply that we are holding that petitioner is not entitled to the claimed deductions merely because he failed in most instances to produce substantiating documentary evidence. In ordinary circumstances, where records have been lost or misplaced, we would give weight to oral testimony concerning the fact and amount of a taxpayer's business expenses. However, petitioner, a well-educated individual, claimed numerous deductions which would not have been claimed if he had made a good faith effort to file accurate returns. When questioned about those deductions, petitioner was evasive or unresponsive. He exhibited a complete lack of candor. The Court is of the opinion that the evidence presented at the trial does not reliably support claimed deductions in an amount in excess of the standard deductions under section 144. To properly reflect our Findings, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue.↩
2. Petitioner's position is not entirely clear. His post-trial brief is as follows: The intention of Congress was and is to promote public educational pursuits. Public and private educational groups operate on the principle of local autonomy. The base of local autonomy in the Public Schools is the self-contained classroom and its teacher. Respondent discriminated against the Petitioner in the denial of Business Expenses which are granted to other Professional individuals. Petitioner prays that the determined deficiency be set aside or eliminated.↩
3. If petitioner used the IBM Selectric Typewriter in his teaching "business" during that portion of 1966 when he still owned it, he is entitled to a deduction for depreciation thereon. The evidence indicates that when he departed from Los Angeles in March 1966, he left the typewriter with someone in the community. He declined to be more specific. Depreciation for the first two months of 1966 amounts to $16.64; however, this amount when added to the other items noted in the Opinion will not exceed the standard deduction.↩